IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| FORD MOTOR CREDIT COMPANY, | ) ) ) | COMPLAINT |
| | ) ) | JURY DEMAND |
| Defendant. | ) ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("the ADA") and Title I of the Civil Rights Act of 1991 to correct employment practices made unlawful by the ADA and to provide appropriate relief to (pseudonym) John Doe (hereinafter "John Doe" or "Doe"), who was adversely affected by those unlawful practices. Plaintiff Equal Employment Opportunity Commission ("the Commission") alleges that Defendant Ford Motor Credit Company has violated the ADA by failing to keep confidential medical information provided to Defendant by Doe in response to Defendant's inquiries about his ability to perform job-related functions, and that Doe suffered serious mental and emotional injuries as a result of Defendant's failure to keep this information confidential.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(A), which incorporates by reference Sections

1

Case 3:06-cv-00900   Document 1   Filed 09/20/06   Page 1 of 8 PageID #: 1

706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and Section 1977A of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged below were committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. Plaintiff Equal Employment Opportunity Commission ("the Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) of Title VII, 42 U.S.C. §2000e-5(f)(1).

4. At all relevant times, Defendant Ford Motor Credit Company ("Employer"), a foreign Corporation, has been continuously doing business in the State of Tennessee and the City of Franklin and has continuously had at least 15 employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) of the ADA, 42 U.S.C. § 12115(5), and Section 107(7) of the ADA, 42 U.S.C. § 12117. which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. Defendant Employer has been a covered entity under Section 102(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, John Doe filed a charge with the Commission alleging violations of the ADA by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. From February, 2002, through April, 2005, Defendant Employer engaged in unlawful employment practices at its Franklin, Tennessee facility, in violation of Section 102(d)(3)(B), (d)(3)(C), and (d)(4)(C) of the ADA, 42 U.S.C. § 12112(d)(3)(B), (d)(3)(C), and (d)(4)(C).

8. In March, 2001, Doe became employed with Defendant as a regular full-time employee.

9. In February, 2002, Doe was diagnosed with a serious health condition, the treatment of which would require him to miss several hours of work each week. He approached his manager and, without disclosing the specific diagnosis, advised the manager that he would need time off from work for medical treatment and asked how he could get the time off without jeopardizing his employment.

10. Doe's manager inquired as to the specific reason why Doe would need the time off, and, in response thereto, Doe advised his manager of his medical diagnosis.

11. After being so advised, Doe's manager referred him to Defendant's medical department.

12. Defendant's medical department required Doe to provide information about his diagnosis and anticipated medical treatments, then approved Doe for intermittent leave under the Family and Medical Leave Act ("the FMLA") in accordance

3

Defendant's FMLA policy. Defendant's medical department advised Doe that he should provide notes to the medical department after each time he took FMLA leave substantiating that he had used the leave for the purpose of receiving medical care, but that he did not have to tell anybody else why he had taken leave.

13. About three weeks later, Doe's manager called Doe into the office and advised Doe that Doe's immediate supervisor was inquiring why Doe was taking FMLA leave and was upset that she was not being told the reason. The manager asked Doe if it was okay to advise the manager of Doe's reason for taking leave. Doe told his manager that he did not want his supervisor to know the reason because Doe did not trust her to keep the information confidential.

14. About three weeks after the meeting described in paragraph 10 above, Doe's manager again called Doe into his office and told Doe that Doe's supervisor was still inquiring why Doe was taking time off work and was still upset that she was not being informed of the reason. Doe's manager told Doe that he thought Doe's supervisor should be told of Doe's reason for using the leave. Doe told his manager that he did not want his supervisor to know why Doe was taking FMLA leave, and that Defendant's medical department had told him that he did not have to tell anybody else his reason for using FMLA leave.

15. Despite Doe's objection, his manager informed Doe's supervisor of Doe's reason for taking FMLA leave.

16. Over the course of the next two years, Doe's co-workers' treatment of Doe changed. Whereas they formerly had been friendly to Doe and included him in daily group lunches, Doe was no longer welcome to go to lunch with them. None of his co-

4

workers sat in the chairs close to him, and co-workers who previously had been friendly to him would not speak to him.

17. In April, 2005, Doe learned that his supervisor had told his co-workers of Doe's medical diagnosis during the course of office gossip. Doe eventually learned that the gossip about his medical condition had spread to employees throughout Defendant's facility.

18. In April, 2005, Doe complained to Defendant that his supervisor had divulged his medical information to his co-workers. Defendant conducted an investigation into Doe's complaint, which investigation confirmed that Doe's supervisor had informed other employees of Doe's medical condition.

19. The realization that his supervisor's gossiping about Doe's medical condition was why his co-workers had changed from being friendly to him to shunning him caused Doe severe mental and emotional injuries and financial losses, including lost income.

20. Defendant's disclosure of Doe's medical information violated Sections 102(d)(3)(B), (d)(3)(C), and (d)(4)(C) of the ADA, 42 U.S.C. § 12112(d)(3)(B), (d)(3)(C), and (d)(4)(C), because Defendant required Doe to disclose the information as a condition of obtaining FMLA leave and the information was provided to Defendant by Doe—and to Doe's supervisor by Doe's manager—in response to their inquiries about Doe's ability to perform job-related functions.

21. The unlawful employment practices complained of in paragraphs 17 through 20 above were and are intentional.

22. The unlawful employment practices complained of in paragraphs 17 through 20 above were and are done with malice or with reckless indifference to the federally protected rights of John Doe.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from disclosing medical information about Defendant's employees.

B. Order Defendant Employer to institute and carry out policies, practices, and programs which provide protection against disclosure of medical information about Defendant's employees, and which eradicate the effects of Defendant's past and present unlawful employment practices.

C. Order Defendant Employer to make whole John Doe by providing appropriate backpay and compensatory damages for his other pecuniary losses with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D. Order Defendant Employer to make whole John Doe by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs 14 – 17 above, including emotional pain, suffering, inconvenience, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

E.  Order Defendant Employer to pay John Doe punitive damages for its malicious and reckless conduct described in paragraphs 14 - 17 above, in amounts to be determined at trial.

F.  Grant such further relief as the Court deems necessary and proper in the public interest.

G.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission demands a jury trial on all questions of fact raised by the Complaint.

Respectfully submitted,

JAMES LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

_____
FAYE A. WILLIAMS
Acting Regional Attorney
TN Bar No. 11730

_____
STEVEN W. DILLS
Trial Attorney
TN Bar No. 11970

_____
SALLY RAMSEY
Trial Attorney
TN Bar No. 18859

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
50 Vantage Way, Suite 202
Nashville, TN 37228
(615) 736-5784